Case 1:04-cv-05436-NEW   Document 32   Filed 09/12/05   Page 1 of 11

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE SEBER DALOIAN, | CASE NO. CV-F-04-5436 LJO |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| ANNE VENEMAN, Secretary, U.S. Dept. of Agriculture, | |
| Defendant. | |

Pursuant to a notice filed on July 18, 2005, Defendant Anne Veneman, the Secretary of the United States Department of Agriculture, moves to dismiss plaintiff's claims and moves for summary judgment. Plaintiff filed an opposition to the motion on September 2, 2005. The Court vacated the hearing and took the motions under submission. Having considered the moving and opposition papers, as well as the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL BACKGROUND

**Background**

Plaintiff resigned from her position with the Forest Service in August 1994. In April 2001, plaintiff contacted the Equal Employment Opportunity Counselor regarding her claim that she had been subjected to sexually hostile work environment. She contacted the Equal Employment Opportunity Commission ("EEOC") six years after her employment ended pursuant to the terms of a settlement agreement in a class action in which the Forest Service agreed that past female employees could contact the EEOC to raise sexual harassment complaints that would otherwise be time-barred.

The EEOC accepted for investigation and adjudication, pursuant to the terms of the settlement agreement, plaintiff's complaint. The EEOC stated the following issues to be adjudicated:

> Whether the agency subjected the complainant to discrimination based on sex (female), when she was subjected to an allegedly hostile work environment and constructive discharge, while a temporary employee at the Sequoia National Forest between June 13, 1994 and August 8, 1994, when:
>
> > After the complainant refused to have drinks after work with her supervisor, all requests for training and instructions were allegedly refused;
> >
> > The complainant was not informed that trail signs had been removed and to watch for cattle trails crossing the main trails; The complainant was sent out, untrained and unfamiliar with the territory, with an untrained student; and
> >
> > The complainant was told to resign or be terminated.

The EEOC processed plaintiff's complaint and found that plaintiff could not make a showing of sexual harassment sufficient to justify a hearing. The EEOC ALJ issued a decision without a hearing. The EEOC ALJ determined that the conduct plaintiff complained of was not sufficiently severe and pervasive as to alter the terms and conditions of her employments. Plaintiff appealed the matter to the EEOC. The appeal was denied and plaintiff filed this judicial action.

On March 16, 2004, plaintiff filed her judicial complaint entitled "Complainant's Request for Reconsideration or to Vacate a Decision." The complaint is stated in terms of an "appeal," of the administrative decision and plaintiff sets out numerous procedural errors in the EEOC's handling of her case. From the complaint, the Court infers she alleges discrimination, based on gender and disability, and procedural deficiencies in the EEOC's administrative handling of her claim.

**Defendant's contentions**

Plaintiff was hired for a temporary employee position as an Animal Packer Wilderness Ranger on June 13, 1994. In her first 2 weeks of employment, plaintiff repaired tack in the tack room among other things. During her first two weeks of employer, she accompanied a second level supervisor to the general store and during that trip, he asked her out for a drink. She declined.

She was then accompanied by another employee to become familiar with the trail system. Plaintiff got lost on at least three pack trips, including one in which she had to be airlifted from a canyon

1  by helicopter, at significant cost to the agency.

2  On August 8, 1994, District Ranger Del Pengilly gave plaintiff a choice of resigning or being
3  terminated. Plaintiff decided to resign to avoid a derogatory mark on her employment record.

4  Plaintiff's allegation in support of hostile work environment is that a male supervisors asked her
5  to join him for a drink. This conduct was not sufficiently severe that pervasive as to comprise a sexually
6  hostile work environment. At the administrative level, plaintiff did not press her hostile work
7  environment claim but suggested that her problems arose from lack of training and her lack of training
8  was attributable to her having declined the drink invitation.

9  In this action, plaintiff shifts to her claim to having a learning disability. She alleges that instead
10 of forcing her to resign, she should have been accommodated by providing training as to the trail system.
11 Plaintiff, however, failed to exhaust her claim for disability discrimination.

12 Plaintiff's complaint also suggest that she was dissatisfied with the way the EEOC ALJ handled
13 the proceeding. The remedy for a person aggrieved by the agency action is to file an action in district
14 court. A complainant who believes that the investigation is not being conducted appropriately has the
15 opportunity to shift the forum to district court, conduct their own investigation through the tools of
16 discovery and present the case to court.

17 **Plaintiff's opposition**

18 Pro Se Plaintiff's opposition to the motion consists of a statement of disputed facts. She repeats
19 the facts as defendant describes them, then inserts where she feels she disputes the fact. She attaches as
20 Exhibits to the statement of undisputed facts much of the administrative record from the EEOC
21 administrative file, such as the complaint, EEOC investigative report, her evidence submitted to the
22 EEOC, etc. The relevant disputed facts are as follows:

23 1. Plaintiff disputes that she was shown the trails or explained the trails, i.e., given any form
24 of training. Trail signs were poorly marked or few and far between. She refers to a letter
25 from another packer, Mike Cobb, who says he was not given training as to the trails.

26 2. Plaintiff states that she informed defendant of her learning disability from the beginning.
27 Plaintiff refers to Exhibit G attached to her opposition and Exhibit L, a letter discussing
28 her disability. Exhibit G is a multi-page document containing unrelated documents with

wide ranging dates. The first page is a 1994 "Notification of Personal Action" form which appears to be the form filed out by the forestry service as to the date, terms and employment salary for plaintiff's position. The second document in Exhibit G is a Diagnostic Assessment Report dated May 7, 1990 which reports tests given to plaintiff and that states, in part, she has a "difficult time executing a task that is purely visual in nature." The remaining two documents in Exhibit G are letters plaintiff wrote to the Chief of the Forestry Service, dated January 2, 2003 and August 19, 2004, wherein she says she has a learning disability. Exhibit L is plaintiff's September 10, 2004 and September 28, 2004 letters on topics related to obtaining documents for her administrative claim.

3. Plaintiff disputes that a formal forestry procedures for separating her from employment were properly followed. (Additional Fact no. 2 "the Separation for Performance or Conduct was not followed through".)

4. Plaintiff cites to Exhibit J, which is her journal she was required to keep as part of her school grading purposes. In the journal, she says she asked for help during her employment and recites that she was just dropped off by another packer on the trails and just left there.

5. Plaintiff attaches an information packet form from OSHA Health and Safety Protection in the workplace and argues that she was put in danger by the lack of training.

6. Discovery was not provided to her in the administrative proceeding. She refers to letters she sent to people, which she attaches as Exhibits, to ask for documents for her administrative claim.

## **ANALYSIS & DISCUSSION**

**A. Standards for Motion to Dismiss and for Motion for Summary Judgment**

Defendant has moved for both a motion to dismiss and for summary judgment on the claims which are not dismissed.

**1. Motion To Dismiss Standard**

Fundamentally, federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins.*

*Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994).  Limits on federal jurisdiction must neither be disregarded nor evaded.  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978).  A plaintiff bears the burden to establish that subject matter jurisdiction is proper.  *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396.  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over an action.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S 178, 189, 56 S.Ct. 780 (1936); F.R.Civ.P. 8(a)(1).

A party may challenge the court's jurisdiction over the subject matter of the complaint under Fed.R.Civ.P. 12(b)(1).  A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack jurisdiction either "facially" or "factually." *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be made on the basis that the complaint fails to allege grounds for federal subject matter jurisdiction. It may consider *extrinsic evidence*; and if the evidence is disputed, it may *weigh* the evidence and *determine* the facts in order to satisfy itself as to its power to hear the case: 'The existence of disputed material facts will not prevent the trial court from evaluating for itself the merits of jurisdictional claims.' *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Defendant attempts to "factually attack" jurisdiction. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  The court may consider extrinsic evidence to determine the jurisdictional question. *Roberts v. Coorrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

**2.  Summary Judgment Standard**

Initially, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978).  Rule 56(e) requires the party against whom the motion is made to "set for specific facts showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary judgment may be granted if the court finds it appropriate." *Nilsson, Robbins, et al v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank*

*of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). The court must not weigh the evidence and must draw all reasonable inferences in favor of the nonmoving party. *See Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 2077 (1992) ("Because this case comes to us on petitioner Kodak's motion for summary judgment, the evidence of respondents is to be believed, and all justifiable inferences are to be drawn in their favor.").

The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of material fact; the court may rely entirely on the evidence of the moving party. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). If the motion is based on deposition testimony, the court may rely exclusively on portions highlighted by the moving party and need not comb the deposition to discover conflicting testimony. *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d at 403. The court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The opposition must designate and reference specific triable facts. *Frito-Lay, Inc. v. Willoughby* (DC Cir. 1988) 863 F.2d 1029, 1034. Inferences drawn from the evidence, however, must be viewed in the light most favorable to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2077 (1992).

**B.  Plaintiff's Sex Discrimination Claims**

The underlying claim before the EEOC was for a sexually hostile work environment.

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1).

A plaintiff may establish violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399 (1986). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings*, 477 U.S. at 67, 106 S.Ct. 2399 (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).

The elements for a prima facie case of environmental sexual harassment are:

1. Plaintiff belongs to a protected group;
2. Plaintiff was subject to unwelcome sexual harassment;
3. The harassment complained of was based on sex;
4. The harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and
5. Respondeat superior.

*See Kotan v. California Youth Authority*, 217 F.3d 1104, 1110 (9th Cir. 2000); *Pavon v. Swift Trans. Co., Inc.,* 192 F.3d 902, 908 (9th Cir. 1999).

Of the above elements, the Court's attention is directed to the extent and degree of the alleged harassment. The Ninth Circuit Court of Appeals has described actionable conduct:

> "'Conduct must be extreme to amount to a change in the terms and conditions of employment.' To be actionable under Title VII, 'a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so.'"

*Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998)); *Kortan*, 217 F.3d at 1110.

The Ninth Circuit uses "a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). Factors considered include frequency, severity and level of interference with work performance and whether discriminatory conduct is physically threatening or humiliating or a mere offensive utterance. *Faragher*, 524 U.S. at 787-788, 118 S.Ct. 2275; *Brooks*, 229 F.3d at 924 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993)).

In determining what constitutes "sufficiently pervasive" harassment, courts have held that harassing acts cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature. *Downes v. F.A.A.*, 775 F.2d 288, 293 (D.C. Cir. 1985); *Fisher*, 214 Cal.App.3d at 610, 262 Cal.Rptr. 842. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275. As to alleged harassment of women, a court must consider "what is offensive and hostile to a reasonable *woman*." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994) (emphasis in original; while a harasser's abuse of men was not related to their gender, "his abuse of female employees, especially [plaintiff], centered on the fact that they were females"); *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991).

Here, the conduct complained of which created a hostile work environment consisted of a single, isolated incident of being asked out for a drink. A single incident of this nature is not extreme or objectively and subjectively offensive. There is no evidence which would escalate this isolated incident to one which created a "hostile" work environment as that term is defined by the Ninth Circuit. Thus, as a matter of law, the incident does not amount to a hostile work environment.

**C.   Retaliation**

What plaintiff really complains about is the lack of training on the trails such that she could perform her job. The Court, inferring this argument most favorably to the plaintiff, views this argument as a claim for retaliation for her refusal to have a drink with a supervisor.

To succeed on a Title VII retaliation claim, a plaintiff must first establish a prima facie case by showing he/she "engaged in a protected activity, that [he/she] thereafter subjected her employer to adverse employment action, and that a causal link exists between the two." *Cohen v. Fred Myer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

There is no causal link between plaintiff's refusal to go out for a drink and her termination, lack

of training or other treatment. Plaintiff offers no evidence that even relates to training or her termination. The evidence establishes that plaintiff's first line supervisor was Susan Nickey and her second line supervisor was James Diesman, the individual who asked her out for a drink  There is not any evidence that Diesman had authority to authorize or prohibit training to plaintiff. Indeed, there is not any evidence of the training procedures for plaintiff's position or that Diesman had anything to do with training. In fact, plaintiff introduces the statement of Mike Cobb who states that he was a wilderness ranger and was not given any trail training either. Thus, the lack of any evidence that plaintiff was denied training for refusing the supervisor's offer fails to establish a prima facie case of retaliation.

**D.     Conduct not described in the administrative complaint**

Plaintiff alleges that her disability should have been accommodated.

The civil action is limited to acts of discrimination reasonably related to the allegations of the administrative charge or new acts occurring during the pendency of the charge before the administrative body. *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973).

The parties, including the Secretary of Agriculture, entered into a settlement agreement in the class action case of *Donnelly, et al v. Secretary of Agriculture,* Civ. No. 95-4389 DLJ (N.D. Cal.). The members of the class were defined as "all past and current non-supervisory female employees of Region 5 who have been, or are being subject to a sexually hostile work environment at any time since February 1, 1994 through the date of Final Approval and who are seeking equitable relief only." (Defendant's Moving papers, Exhibit A at 397 ¶2.3.) The agreement also provided that class members who had not previously initiated complaints "relating to sexual harassment or retaliation for EEO activity related to sexual harassment that arose on or after February 1, 1994... may initiate a complaint with respect to such matter...." by filing a "complaint form" with the agency. (Defendant's Moving papers, Exhibit A at 422, ¶21.1.) Thus, the settlement agreement permitted claims arising from sexual harassment, even though those claims would otherwise be untimely.

The administrative complaint filed by plaintiff with the EEOC did not include claims of disability discrimination. (Defendant's Moving papers, Exhibit A p. 369.) Thus, disability discrimination was not exhausted at the administrative level. Moreover, the settlement agreement, which permitted the filing of late sexual harassment claims, did not encompass or permit any other form of discrimination.

9

Since plaintiff did not exhaust her administrative remedies on the disability discrimination, she is precluded from pursuing a civil action on that claim.[1]

**E.      EEOC's alleged negligence**

In her complaint, plaintiff alleges numerous procedural errors in the EEOC proceeding.

It is well established that Congress has not authorized-either expressly or impliedly, either in Title VII or elsewhere-"a cause of action directly against the EEOC for misprocessing of claims asserted against third-party employers." *Ward* v. *EEOC,* 719 F.2d 311, 312-14 (9th Cir. 1983), *cert. denied,* 466 U.S. 953 (1984). Instead, Congress has provided the ability to pursue de novo judicial proceedings with the EEOC's handling of their charge. *Hall* v. *EEOC,* 456 F. Supp. 695, 701 (N.D. Cal. 1978) (quoted in *Ward,* 719 F.2d at 314).

Plaintiff has named her former employer as defendant in this action. Presumably, she wishes to hold defendant liable for the alleged misprocessing of her administrative claim.

The Supreme Court has noted that it must accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority. The Supreme Court adopted the holding that: "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-765, 118 S.Ct. 2257, 2270 (U.S.Ill.,1998). Thus, vicarious liability may be found for persons with supervisory authority over plaintiff.

Here, plaintiff seeks to hold her former employer liable for the alleged negligent acts by the EEOC in processing her EEOC complaint. No vicarious liability exists on behalf of the employer for the acts of the EEOC. In short, plaintiff cannot hold her employer liable.

---

[1] Moreover, the Court questions whether the disability claim, arising from plaintiff's 1994 employment, is timely made. However, since the Court can resolve the disability claim on plaintiff's failure to exhaust administrative remedies, the Court does not reach this issue.

In addition, plaintiff raises for the first time possible violations of OSHA standards. She has not plead this claim.

**CONCLUSION**

For all the foregoing reasons, the Court issues the following order:

1. GRANTS Defendant's motion for summary judgment as to the discrimination based on hostile work environment.
2. GRANT Defendant's motion for summary judgment as to the claim for disability discrimination.
3. GRANT Defendant's motion for summary judgment as to the claim for errors in processing plaintiff's EEOC administrative claim.

The clerk of this Court is directed to enter judgment in favor of defendant Anne Veneman, Secretary United States Department of Agriculture and against plaintiff Debbie Seber Daloian. The October 27, 2005 pretrial conference and the December 5, 2005 trial are VACATED.

IT IS SO ORDERED.

**Dated:   September 9, 2005**            /s/ Lawrence J. O'Neill
b9ed48                                             UNITED STATES MAGISTRATE JUDGE